**LI JUAN WANG, Petitioner,**

v.

**UNITED STATES ATTORNEY GENERAL, Respondent.**

No. 03–40777–ag.

United States Court of Appeals, Second Circuit.

March 22, 2007.

Gang Zhou, New York, NY, for Petitioner.

Daniel Bella, Assistant United States Attorney, for Joseph S. Van Bokkelen, United States Attorney, Northern District of Indiana, for Respondent.

PRESENT: Hon. CHESTER J. STRAUB, Hon. ROBERT A. KATZMANN, Circuit Judges, Hon. JANE A. RESTANI,* Chief Judge.

**SUMMARY ORDER**

Li Juan Wang, a native and citizen of the People's Republic of China, through counsel, petitions for review of the September 30, 2003 BIA decision affirming the July 3, 2002 decision of Immigration Judge ("IJ") Paul A. Defonzo denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Li Juan Wang,* No. A76 506 562 (B.I.A. Sept. 30, 2003), *aff'g* No. A76 506 562 (Immig. Ct. N.Y. City July 3, 2002). We assume the parties' familiarity with the underlying facts and procedural history.

Where, as here, the BIA summarily affirms the decision of the IJ without issuing an opinion, *see* 8 C.F.R. § 1003.1(e)(4), this Court reviews the IJ's decision as the final agency determination. *See, e.g., Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005); *Yu Sheng Zhang v. U.S. Dep't of Justice,* 362 F.3d 155, 158 (2d Cir.2004). This Court

* The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

reviews the agency's factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, we will vacate and remand for reconsideration if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 395, 406 (2d Cir.2005); *Tian–Yong Chen v. INS*, 359 F.3d 121, 129 (2d Cir.2004); *see also Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 158 (2d Cir.2006).

■ In her application for asylum, Wang stated that beginning in April 2000, she was "singled out by the Mayor/Manager of Tantou Village for harassment." She alleges that she was persecuted because she was "the attending nurse to the father in law of the Mayor/Manager" when, after sustaining a head injury, the father-in-law died at the clinic where Wang worked. According to the application, the official blamed Wang for his father-in-law's death, and began harassing Wang, her family, and her boyfriend as a result.

In December 2001, at the direction of the IJ, Wang, through counsel, submitted a brief in support of her asylum application, in which she argued that she was persecuted based on her membership in a particular social group, defined as "victims in the mainland China society who in pursuing their normal daily lives have had the bad luck of coming into conflict with an activist or activists from the privileged class of the ruling Chinese Communist Party and have as a result been subject to escalating mistreatment against which they cannot effectively defend themselves." The brief alleged that the official who was

harassing Wang was a member of the Chinese Communist Party (CCP), was "recently promoted to a deputy township executive," and "has clearly taken advantage of his power position as [a] ranking government official."

Wang did not testify at her asylum hearing before the IJ, relying instead on her application and the brief submitted by her counsel. The IJ denied Wang's application, finding (1) that she failed to carry her burden of proving by sufficient, objective evidence that the harm she suffered at the hands of the village executive was "on account of" a protected grounds; (2) that the petitioner did not belong to a "particular social group" as defined in the case law; (3) that Wang did not qualify for withholding of removal; and (4) that Wang did not qualify for Convention Against Torture (CAT) relief because she had not alleged that she had ever been subjected to torture in China, and she had not shown that she would be tortured upon return to China. According to the IJ, despite Wang's claim of membership in a particular social group, she failed to offer evidence of an immutable characteristic "attributed to [Wang] by her persecutor which would allow her to be considered a member of a particular social group such as defined in the case law." Rather, the IJ concluded that Wang's mistreatment was the result of "a mere vendetta" by the village official, which did not suffice to merit asylum relief.

Wang, through counsel, appealed the IJ's decision to the BIA. In September 2003, the BIA issued an order affirming, without opinion, the IJ's decision. In October 2003, Wang filed a timely petition for review in this Court, arguing that: (1) she demonstrated her membership in a particular social group consisting of the "non-

CCP segment of the population in China," who are persecuted by CCP members as a result of their non-CCP status; and (2) she established both past persecution and a well-founded fear of future persecution based on her membership in that particular social group. Wang's brief does not address her CAT claim.

An asylum applicant bears the burden of establishing that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). In the present case, petitioner Wang, in briefs to the BIA and to this Court, identified her particular social group as consisting of:

> victims subject to persecution by local Communist activists who in personal vendetta against such average citizens as Respondent wield their government power based on their political privilege as Communist activists to penalize such victims where as here the group's characteristics are that they have chosen not to be affiliated with the ruling Communist Party and that their conflict with such Communist activists is not one of their own making.

The BIA has not, to date, determined whether such a group, or a sufficiently analogous group, could be considered a particular social group under the statute,[1] and the BIA's summary affirmance in this case provides this Court with no guidance as to this point. However, we need not decide this issue, nor remand to the BIA to decide the issue, because petitioner has failed to show the required nexus between the alleged persecution and the defined social group. As such, her claim must be denied.

An asylum applicant must show not only that she was a member of a particular social group or that her case falls within one of the other enumerated protected grounds; the "applicant must also show, through direct or circumstantial evidence, that the persecutor's motive to persecute arises from" the protected ground. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir.2005) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). The case law suggests that while "particular social group" may be interpreted broadly, the nexus requirement should be interpreted strictly. *See Hong Ying Gao v. Gonzales*, 440 F.3d 62, 68 (2d Cir.2006) (discussing *Fatin v. INS*, 12 F.3d 1233 (3d Cir.1993)).

In the present case, there was sufficient evidence to support the IJ's finding that the alleged persecution was due to a personal vendetta, rather than one of the protected grounds. Not only did Wang not provide any testimonial evidence that the alleged persecution she endured occurred on account of a political opinion or membership in the particular social group she defined in her papers, but Wang's papers are replete with statements to the contrary. In her application for asylum, Wang makes statements such as, "[t]he reason that I have received this unjust treatment is that I was the attending nurse to the father in law of the Mayor/Manager where I worked;" "I have no

---

1. It is possible that this is so because these types of claims are normally brought as "political opinion" cases. However, Wang does not raise a persecution claim based on actual or imputed political opinion within her petition and has thus waived such an argument. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 546 n. 7 (2d Cir.2005); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998).

doubt that if I were to return to my village that the [M]ayor would continue to persecute me for the death of his father-in-law;" "the Mayor had already come looking for me to take some kind of revenge against me;" "[w]e were all shocked by the [M]ayor's response to his father in laws death;" and "the village executive then turned his furor on me saying that he would do everything within his power to punish us for his father-in-law's death...."

Although an applicant can meet the nexus requirement by demonstrating mixed motives, *see Osorio v. INS*, 18 F.3d 1017, 1028 (2d Cir.1994); *In re S–P–*, 21 I. & N. Dec. 486, 495 (BIA 1996), Wang failed to make that showing. There is no evidence that the village executive targeted Wang for her political opinion or membership in the defined social group. Wang has not provided any statements made by the executive showing that his actions were politically motivated, and she has not set forth any instance, prior to the father-in-law's death, of persecution or harassment, even though she had lived in the Tantou Village for over twenty years prior to the death.

In her brief on appeal, petitioner argues that "[the village executive could have resorted to proper lawsuits for wrongful death of his father-in-law against the physician and the petitioner for monetary damages. However, he chose not to.... There was no utility to the village executive's persecutory tactics except for the motive to send a message with chilling effect in the general population." However, petitioner's own statements belie her assertion. The asylum application itself states that the motive behind the executive's "persecutory tactics" was revenge for his father-in-law's death.

Although petitioner has supplied country conditions reports which corroborate the suppression of non-communist views and activities in China, substantial evidence supports the IJ's finding that the village executive's actions were "based solely on personal vendetta." Thus, the IJ concluded that petitioner failed to meet the nexus requirement, and it cannot be said that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Zhou Yun Zhang*, 386 F.3d at 73 & n. 7. Accordingly, the agency did not err in denying Wang's asylum claim.

■ Because asylum and withholding of removal "are factually related but with a heavier burden for withholding, it follows that an applicant who fails to establish h[er] eligibility for asylum necessarily fails to establish eligibility for withholding." *Zhou Yun Zhang*, 386 F.3d at 71. Wang's claim for withholding of removal must accordingly be denied. Because Wang did not argue her CAT claim in her petition for review to this Court, her claim is deemed waived. *See Yueqing Zhang*, 426 F.3d at 542 n. 1, 546 n. 7; *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998).

We have considered all of the petitioners' claims and find them to be without merit. The petition for review is therefore DENIED, and the outstanding motion for stay of removal is DENIED as moot.